The court resumes. Good morning again. I think it's still morning. And our next case is American Radio v. Qualcomm et al., 2013-16-41-2-3-4. And Mr. Pasternak is here. May it please the court, my name is Tom Pasternak. I'm here on behalf of American Radio. Black letter law of patent claim construction is to start with the words of the claim as understood by one of ordinary skill in the art. In light of the specification of prosecution history. Correct, Your Honor. We all agree, for example, that Signor is understood by one of ordinary skill in the art to mean waveform. Nothing in the spec here departs from that ordinary definition. Is the term Signor ever used in the written description without preceding modifier? It is not, Your Honor. So are we supposed to read the term out of context of that particular modifier? You're supposed to understand what Signor means before you apply the modifier. Just to understand that Signor means waveform. And then when Mr. Hodder decided how he wanted to modify it in particular places, he did so both ways. I don't think anyone disputes that Signor means waveform, do they? No. Okay, so your friend on the other side would agree with that general proposition, correct? He would agree. So now we have to put Signor in the context of the particular modifiers that the court had under consideration, correct? Right, but the court in this case limited the word Signor unnecessarily and without any justification in the specification or the file wrapper to a signal at the carrier waveform and at the input of the receiver. That is not found in the specification anywhere. The limitations on Signor should come from the modifiers that Hodder chose to use. What if the court, rather than using the phrase carrier frequency, said that the RF signal or the analog signal is a signal that's been received by the receiver but has not yet been modulated or not yet been demodulated or mixed? Would that change anything? It would depend on where in the claim you are talking about signal. Sometimes signal is not at the input to the carrier or to the receiver. All right, so what if I'm talking about the RF signal? The RF signal at the input to the receiver could be defined in that manner. But you would still have the same problem. Whether you call it carrier frequency or just a frequency before anything has happened to it, it's still the same thing, right? Yes, Your Honor. Okay, but you said it would be okay to define it in that manner? It would be okay to define it in that manner at that specific place in the claim. The claims have signals at other places and the issue here is really when reconstruction is performed on the signal. So if we define it in that manner, we're limiting the claim to the order and when reconstruction is performed. Right, so what if the court were to hold that whenever we see the term RF signal or analog signal or electromagnetic signal in all of your claims, the way we understand the claim is you have to do the reconstruction action on that said signal before there's any mixing or down conversion to intermediate frequency. And that's another improper limitation that was read into the claims. Okay, so you wouldn't agree with that? I wouldn't agree with that proposition if that's the implication. Right. And when we read these claims in light of the specification, I think there's some pretty strong persistent language throughout the various columns that make it pretty clear that the way I just described an understanding of RF signal or analog signal, it's just in that very way that maybe there's some preamplification or filtering going on after the signal gets pulled off the antenna, but very certainly all of that reconstruction action is occurring before the mixing, before the down conversion to an intermediate frequency. And so I think what you're asking us to do is don't look at that. Just look at these claims in a very kind of disembodied way. I'm not asking the court to not look at that. I'm asking the court to look at that in light of the law that says they do not interpret the claims in light of the embodiments disclosed, even if there is one preferred embodiment. So what you're talking about is a single preferred embodiment in the specification. The claims I submit are broader than the preferred embodiment. There's essentially one embodiment. I mean, I didn't see any embodiment that hints at your invention covering mix first, reconstruct second. It seemed very, very consistent throughout. You digitize, you reconstruct, you mix. One, two, three. And there is case law that says even when there is one embodiment, you do not limit the claims. All right, so even if that's true, even if it were true that we accept your proposition that one or even two or even three embodiments that do things a particular way don't necessarily end the inquiry. Don't you have a problem in that your construction actually would be inconsistent with the very avowed or at least one of the very avowed purposes of the invention? It would be inconsistent with one of the objects of the invention, yes. There are several objects of the invention that do not require that reconstruction to be performed prior. Right, so if one of the purposes of the invention is the same thing that's reflected in all those embodiments, doesn't that get you over the top to say that that's not reading a limitation and that's just simply recognizing what the written description said? I don't believe that's right, Your Honor. I think there can be more than one objection, more than one object in the specification. This could conflict with one of the objects, but if it's consistent with other of the objects, then we're okay. Do you have written description support for a claim that's read so broadly that it encompasses embodiments that mix first, reconstruct second? Written description is not an issue here, Your Honor. I know, but I'm just wondering where would you point me to within the four corners of the patent that lead me to believe, okay, you were thinking about that kind of way of doing this process? I would point you again to the claims, which are part of the patent document. Let me make sure I understand something. If we conclude that the district court was correct, that analog signal is limited, RF signal is limited to carrier frequency. All signals. Right. In other words, if we conclude that analog signals are limited to carrier frequency, would that automatically lead to the conclusion that the digitized signals are limited to carrier frequency? In other words, do we have to consider the two issues separately? It depends on where the, we'd have to look at all the claims and depend on where the digitized signal is recited in the order of the structure of the claim. Right, but just to follow up on Judge O'Malley's point, I didn't see anywhere in the briefing where you tried to parse out that your dispute over digitized signal is somehow, for one particular claim or two particular claims, completely disconnected from whatever dispute you have over analog signal, RF signal. That is correct. Okay, so they are in that sense. They are related or connected. If we were to affirm on any of the disputed claim constructions, does that end the appeal? I was actually talking to someone about that today. It would depend on which one, and we'd have to go back and look at the accused technology and how we're aware of it at this point. My sense is all three of these are required to continue on with a case of infringement. Okay, because there was the joint stipulation for entry of final judgment and order below, where it looks very clear that it says, in light of the claim construction order American Radio stipulates, that the defendants have not infringed for the following independent reasons. And then, you know, it lists the analog signal issue, the digitized signal issue, the intermediate frequency issue, and then the reconstruction issue. So, just from where I'm sitting right now, that makes it sound like to me that if I were to hypothetically affirm any of the claim constructions on any one of those four, then it's game over. Am I wrong? I don't think you're wrong. I would want to go back and verify that, Your Honor, but I think you're probably right on that. Okay, this is A1179 to A1180. So you've got to win all four or you don't prevail. Again, I think that's right, Your Honor. With respect to the reconstruction issue, I'm trying to decide which portion of the reconstruction analysis that you're having trouble with. Is it, there's essentially three pieces, as I see it in the district courts. It's that it has to occur at the carrier frequency, that it has to include replacing one portion of a signal with another portion, the better portion of the signal, and it has to occur, or it operates on one wave or one cycle of a wave. Which part of that construction do you find is unsupported? Or are you objecting to all three? We're objecting to all three. Okay, but again, isn't there repeated reference in the written description to the fact that you are, that the whole purpose here is to reconstruct the signal by looking at the two halves of the signal and determining which is the best and then substituting in the best side any portions that are not adequate with portions that are better? Again, this is a very similar issue to the issue with respect to signal, whether you read the preferred embodiment or, in this case, it's not the only embodiment. There are different ways of reconstruction described in the specifications, some of which have been described by incorporation by reference. So the answer to your question is we're not, we think the district court limited it to the preferred embodiment and that we think that that's an improper thing to do in light of the Grahamling case law. She found more than one embodiment, right? And then she tried to find the common themes and traits of the various embodiments that were contemplated in the written description and pooled those common traits together to arrive at what was her best understanding of reconstruction. One is the mirroring thing where if one half of the waveform has distortion then you use the good half to mirror. And then there were a couple other versions. One you go to a waveform library and then the other one is you use FFT. Those are all embodiments disclosed in the patent. She didn't take into account any of the embodiments that are disclosed in references, of course, by reference. And she did not take into account any of the issues or the notions of plain and ordinary meaning of the term. What would be the plain and ordinary meaning of reconstruction? We say it's error reduction. If you read the patent... Is there an IEEE article or dictionary that says reconstruction equals any form of error reduction? We cited some dictionary definitions, some extrinsic evidence that come close to doing that, Your Honor. I wouldn't say it's exactly as you phrased it. Again, going back to the notion of how much you have to win here to prevail on reconstruction, do we have to conclude that all three pieces of the district court's construction are wrong? I mean, if we were to say that maybe there were too many limitations read into it but we agree that you have to replace distorted versions of the waveform with an undistorted version, would that still be problematic from your standpoint for purposes of infringement? Perhaps not. And the issue here is going to be, depending on what goes on and what this court decides to do on claim construction, if we believe we have a good faith basis to proceed based on what we know. So depending on what the claim construction is, we may or may not have that good faith basis. So it's going to depend. Mr. Pastanak, you're well into your rebuttal time. If you'd like to save it, we'll give you your full three minutes. I'll just say a word about the intermediate frequency construction, which I just think is an illogical one. It reads the word intermediate out. If you say intermediate frequency is zero, then where's the intermediate frequency? I think that one makes little sense. But I'll save the rest of the time. All right. Mr. Marcus. Intermediate frequency. Sounds like something in the middle. Yes, Your Honor. May it please the court, my name is David Marcus, and my colleague Kevin Goldman and I represent Intel. I'm arguing on behalf of all of the appellees in these consolidated appeals. The term IF has a plain meaning. We've laid that out in our papers. The plain meaning of IF is a signal that has been mixed down or down-converted or shifted down, which is the court's construction. We cite it to an intrinsic reference. Is that an agreement or a disagreement with Judge Chin's statement or question? No, it's neither. I mean, it's intermediate in a sense, but with respect to the frequency, it's any shift of the frequency from the carrier frequency. That doesn't really make sense. Intermediate implies that there's something above and something below it. And under your construction, you would equate intermediate with baseband. That doesn't seem to make sense. Your Honor, that is how those with skill in the art look at it. There is such a thing as zero IF, which is baseband. The Simone patent, which is an intrinsic reference, talks about an intermediate frequency of zero hertz. Well, isn't it also possible that the references that you're citing to simply are, in those cases, explaining the concept of direct down-conversion but attempting to use terms that people understood. In this particular case, in this patent, it actually talks about intermediate frequency being something between two frequencies. That's not right. It refers to intermediate frequency as the frequency that's the product of mixing. It never says that it couldn't be baseband or it couldn't be zero IF. It just doesn't speak to that. It's not in conflict with the plain meaning. And those references really very clearly refer to zero IF  But there are an equal number of references that refer to intermediate frequency as something that's between two frequencies. Well, it could be. So in a super heterodyne receiver, it is between baseband and the carrier frequency. But in a direct conversion, it isn't intermediate in the sense of being between two frequencies. It's zero hertz. And if you look at the briefing, they have no answer for the intrinsic and extrinsic references we cite, which are crystal clear on that fact. Now, to get back to Judge Chen's question, it is intermediate in the sense that, according to the IEEE dictionary, it's an intermediate step in the transmission or reception process. And that's true. Going to zero IF or baseband is in the middle of the process before you demodulate and decode the information. So in fact, you're not reading the word intermediate out. And in any event, the plain meaning of the term according to these references, including an intrinsic reference and extrinsic references, is that it can be zero hertz. And there's nothing in the patent to the contrary. Now, with respect to the reconstruction term, which the court addressed for a moment, the reconstruction terms, below, American Radio conceded that there is no plain meaning. They conceded that below. Where there's not a plain meaning, it's perfectly appropriate to look to the specification to define the term. You didn't ask the trial court to add the third prong of its construction, the operand is on a full waveform or cycle, did you? That's correct, Your Honor. The district court's construction is slightly broader than the one that we had asked for before, but we're perfectly comfortable with it. Slightly broader or slightly narrower? Narrower, sorry. And what do you understand the district court sort of been intending with that piece of its phrase? Sure. The district court wanted to make it very clear that it wasn't limiting the construction to the three embodiments described in the specification. Wavelet analysis, FFT, and the replacement with the mirror image. Rather, from those, it had to define the term based on its use in the specification because there was no plain meaning, and Herdetto says that's what you have to do. So what the court was trying to do is look at those methods that are disclosed or those embodiments, and then say what do they have in common? What do they have in common such that that would be consistent with this general definition? Okay, but you still haven't answered my question. What do you understand that the last portion, the operand is the full wave cycle? What do you understand that to mean? One cycle at a time. Okay, so explain that. Sure. What's being replaced, you're looking at the waveform, the digitized form, you're looking for a distortion. If there's a distortion, you use either the opposite half or you use something that comes from either a wavelet library or... And where do you find support for that in the written description? I mean there's nothing in the claims that says it has to be done that way. That's right, but because we have this term reconstruction for which there isn't a plain meaning, you have to look at how it's used in the specification and how it's described in the specification, one cycle at a time. So that's the only way we can know what it means. But given that there are embodiments in which you can work on the waveform by reference to a library of information, isn't it also possible that the same kind of reconstruction could occur on more than one cycle at the same time? That's not what's disclosed in the patent. The patent is very particular and specific in looking things at one cycle at a time. You thought it was that specific. How do you measure that construction in the first instance? Well again, what we were trying to do was not limit it particularly to the specification to those particular embodiments, but we also were trying to sort of take out of that or extract what's the common modus operandi? What do all these things have in common? And that's what the Abbott case and Herdetto case say is perfectly appropriate when there isn't a plain meaning. So on the waveform library embodiment, where in the spec what is going on here is the treatment on just one waveform or one wave cycle at a time? Your Honor, it's always talking about a particular waveform and it's talking about replacing one portion of the waveform one cycle at a time. Yes, like for example, column 7. Well I don't know, this is talking about FFT. Down around line 50? Yes, Your Honor. For example, a fast Fourier transform may be used to reconstruct a smooth waveform from a distorted waveform by replacing the distorted input waveform with a series of smooth regular waveforms from a waveform library. What do you think that means? I think it's always one cycle at a time because the distortions could be different in the different waveforms. So finding the particular piece to replace it has to be an independent analysis. It's not necessarily that they're the same. What about the reference to a series of waveforms? Well, because you may be doing it, you know, you're looking at cycles of continuous series of waveforms but you're replacing them one at a time. So the series is replacing more than one if there's distortion in more than one. But the specification and the drawing describe an analysis that looks at it one at a time and direct the court to figures two and figures three. And whether or not that whether you're at a certain frequency you have a certain characteristics you look at those each time. And if you don't if it's not right then you replace. Then you go on to the next one. If it is right then you go on to the next one without replacing. That's how the specification describes it, Your Honor. All right. These two terms that you've started with are not your strongest arguments, are they? The two terms that you've started your argument with are not your strongest arguments, are they? Well, I think that they're all strong. I think IF according to plain meaning is there's no question about it in my mind. But RF we're also very strong on. So should I turn to RF, Your Honor? I think so. So the analog signal terms refer to the waveform at the carrier frequency. They don't mean any waveform regardless of frequency. In all of the claims an analog signal is received at the carrier frequency and then digitized. None describe a signal that's been down-converted from the carrier frequency to a... That's true, but there are some claims that aren't so explicit about, you know, this RF signal taken from the antenna. It doesn't... Not... Claim 10 says that but not all the claims. Sure. The asserted claims all talk about a signal that hasn't been down-converted or that comes from the antenna. But let's just put those to the side, Your Honor, because there are a lot of claims. Those claims have to be read in light of the specification. They have to be read in light of the specification and in this particular case the specification tells us exactly what the invention is. It says, the present invention... The present invention is directed to  from RF signals prior to mixing and demodulating the signals. That's at column 4, line 15 to 17. The specification also gives us a very specific description and a very, very good clue that it can't have been down-converted because that would actually frustrate the purpose of the... of the claim... of the patent or the goal of the patent. It says, as further recognized by the present invention, it would be advantageous to accomplish such analysis prior to the non-linear transformation of the RF signal to the IF signal during mixing since the mixing function causes certain data in the signal to be irrecoverable and therefore precludes the identification of some distortion and corruption in the true signal post-mixing. Does the law require that every recited object of the patent be shoveled into the claim if the claim doesn't explicitly recite it? What the law does require, it says that you should not read claims in a way that would be... that would frustrate the purposes of the invention, that would be inconsistent with the invention or that would be in conflict with the goals of the invention. Well, couldn't you have a situation where you have multiple objects of the invention and they're satisfied by different claims? Absolutely, Your Honor. But with respect to this particular object of no mixing, you know, no mixing before down to... no mixing before you digitize and reconstruct. With respect to that one, it is an object.  are inconsistent with it, but more than that, it's not only described as an object, it's described specifically as the present invention. And the barred case is that the barred case tells us when you describe something as the present invention and not just an object, you have to pay particular attention. And the lizard tech and the assist cases taken in conjunction with barred, which says when they say the present invention, he's telling you what the invention is or the patent, he's telling you that. Those two cases say a construction that's in conflict with the goals of the invention or that embraces something that's specifically criticized and distinguished would be a very peculiar construction indeed and wouldn't make any sense because you have to read the claims, of course, in light of the specifications. Do you agree that the analog signal terms and the digital signal terms, digitized signal terms, rise and fall together? In other words, if we conclude that the analog signal carrier frequency limitations is correct, then adding that limitation for the digitized signals is also correct? Yes, Your Honor. Okay. If the court doesn't have any further questions, I will rest. Thank you, Mr. Marcus. Mr. Pasternak has a little bottle sign. We'll give you two minutes. Thank you, Your Honor. Referring to one of Mr. Marcus' last points about the present invention and about the objects of the invention. Mr. Hotto used the clause the present invention, I want to say, 50-ish times. So the patent is replete with the present invention. So to say that any cherry pick out one of these uses of the present invention for reliance on one of these preferred environments. But his point that to have a claim that is actually not just maybe not serving the purposes of an about purpose of the invention but is going so far as to thwart the about purpose of the invention is not something that this court has normally endorsed. I'm not sure if it would thwart the purpose of one of the present inventions. Like you said, I think, Your Honor, there are other claims that would follow some of the other present inventions recitations. The same thing goes to true with respect to the objects of the invention. Defendants pick out certain objects of inventions to advance their arguments while there's other objects of the invention that support our arguments. To pick out one object to say this is the object of the invention is improper when multiple objects have been recited. He said that you did not respond in your brief to his argument that a common understanding of the term IF actually does include basebands. Do you want to respond to that? I looked at the patents that he cited to talk about IF. I think it's improper to pull information from maybe intrinsic evidence that our patent cited in the specification and ignore how Hado defined it. You know, we're looking at how this inventor defined IF and he's defining it in terms of what goes on in a super heterodyne receiver. Again, as I think your honor understands, you have the carrier frequency, you have some intermediate stop, and then you have a baseband frequency. That's how Hado talks about it. So if another reference is brought in by, another patent is brought in by reference somehow departs from that, whether it does or not, I think we're looking first at what the inventor defined it as. What's the passage in the spec that says it the way you just said it? If you look, your honor, at column one of the 754 patent line 10, about line 10 through about line 20, he talks about the super heterodyne and how he's looking at it and attempting to prove upon it. Thank you, Mr.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.     Thank you. Thank you.